**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **JANVIERE CARLIN** *et al.***,** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Case No. 22-cv-800-CRC |
| | : | |
| **CENTERS FOR DISEASE** | : | |
| **CONTROL & PREVENTION** *et al.***,** | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

COME NOW all plaintiffs, *pro se*, and move for summary judgment against Defendants Centers for Disease Control & Prevention ("CDC") and Department of Health & Human Services ("HHS"). Summary judgment is appropriate because both parties agree this is an Administrative Procedure Act ("APA") case based on an administrative record as well as our exhibits attached to this motion and the Complaint to supplement and contradict that record.

**I. STATEMENT OF FACTS & OUR INTERESTS**

**A. Federal Transportation Mask Mandate**

The Coronavirus Disease 2019 ("COVID-19") was first identified in December 2019 in Wuhan, China. In the first couple months of 2020, it had spread around the world, leading the World Health Organization ("WHO") to declare a global pandemic March 11, 2020. Two days later, President Trump declared the novel coronavirus a national emergency. But even prior to these actions, the HHS secretary declared a nationwide public-health emergency Jan. 31, 2020.

1

In the ensuing year, Defendants CDC and HHS issued no binding orders to control the respiratory virus in the transportation sector. At first, they specifically told Americans NOT to wear face masks. The agencies responded prudently by issuing recommendations and guidance, but leaving actual policymaking to the states, which historically have a "police power" to regulate public health and intrastate movement. At some point during 2020, 40 states generally required people to wear face masks indoors under the mistaken impression that this would somehow slow the spread of COVID-19. Many states issued lockdown orders, forcing schools and businesses to close. Some states banned any event with more than a certain number of people.

Federalism came to a screeching halt Jan. 20, 2021, with the inauguration of a new president. One of Joseph Biden's top campaign promises was to force all Americans to wear face coverings, despite saying several times he knew it was almost certainly unconstitutional.

The day after he took office, President Biden signed Executive Order 13998, directing several federal agencies to promulgate orders that, *inter alia*, mandated the wearing of masks on all transportation conveyances and in all transit hubs (such as airports, train stations, and even city bus stops outdoors along the side of streets). 86 Fed. Reg. 7205 (Jan. 26, 2021). President Biden issued the executive order despite admitting on the campaign trail it would likely fail constitutional scrutiny.

Federal agencies that had not issued binding orders for nearly a year since HHS declared a public-health emergency suddenly sprang into action – not because of any change in science or the state of the pandemic, but to placate the political interests of a new president who wanted to fulfill his campaign promise to obstruct the breathing of all travelers, even on short city bus, subway, or taxi rides with no nexus to interstate commerce.

In response to E.O. 13998, CDC and HHS issued what they labeled an "Agency Order" requiring that all passengers and employees using public transportation anywhere in America, or even being present at a "transportation hub" without any intent to travel anywhere, obstruct their oxygen intake by placing any type of mask over their nose and mouth – regardless of whether the covering was approved by the Food & Drug Administration ("FDA") (a unit of HHS), issued a medical-device Emergency Use Authorization ("EUA") by FDA, or had no FDA approval at all including masks made from any material at home. "Requirement for Persons to Wear Masks While on Conveyances & at Transportation Hubs,"[1] 86 Fed. Reg. 8,025 (published Feb. 3, 2021, but effective Feb. 1). CDC and HHS did not provide notice to the public (the order was published two days *after* it took effect) nor did they solicit public comments for at least 30 days as required by the APA. Instead, the agency, in only a couple sentences, invoked the "good cause" exception. Notably the order did not contain an expiration date and is still on the books today, but currently unenforceable because of the April 18, 2022, *vacatur* in *Health Freedom Defense Fund v. Biden*, No. 8:21-cv-1693, 2022 WL 1134138 (M.D. Fla. Apr. 18, 2022); appeal pending No. 22-11287 (11th Cir.) ("*HFDF*").

CDC and HHS directed the Transportation Security Administration ("TSA") to enforce the FTMM. TSA, without any legal authority, announced "Starting on February 2, 2021, TSA will require individuals to wear a mask at TSA airport screening checkpoints and throughout the commercial and public transportation systems. This requirement will remain effective until May 11, 2021." The agency, whose sole statutory mission is to protect the nation's transportation system

---

[1] Referred to throughout this litigation as the Federal Transportation Mask Mandate ("FTMM" or "Mask Mandate")

from crimes and terrorist attacks, stated "TSA will recommend a fine ranging from $250 for the first offense [of not wearing a mask] up to $1,500 for repeat offenders." *Id*.[2] Lacking any authority from Congress to police purported health matters, TSA perpetrated a scheme whereby it would use its statutory authority to use "Security Directives" to deem COVID-19 a "threat to transportation security." It went so far as to make an absurd declaration that anyone not wearing a mask would be deemed a threat to aviation security: "Passengers who refuse to wear a mask will not be permitted to enter the secure area of the airport … those who refuse to wear a mask may be subject to a civil penalty for attempting to circumvent screening requirements, interfering with screening personnel, or a combination of those offenses."

To put its *ultra vires* scheme into place, TSA issued three "Security Directives"[3] and one Emergency Amendment requiring face masks: Health Directives 1542-21-01, 1544-21-02, and 1582/84-21-01 as well as Emergency Amendment 1546-21-01 went into effect Feb. 2, 2021, and expired May 11, 2021.

When the original Health Directives lapsed, TSA reissued them five times for durations of four months (Version A, May to September 2021), four months (B, September 2021 to January 2022), two months (C, January to March 2022), one month (D, March 19 to April 18, 2022), and then two weeks (E, April 19 to May 3, 2022).

TSA's Health Directives expanded on CDC and HHS' order, adding harsh requirements not

---

[2] Later in 2021, President Biden announced this fine structure would double to $500 and $3,000.
.
[3] TSA's orders are misnamed "Security Directives" but in fact have nothing to do with the agency's statutory mission of ensuring transportation security. Since the orders actually deal with purported public-health matters, we will refer to them properly as "Health Directives" throughout the remainder of this brief.

seen anywhere else in the nation during the entire pandemic including that masks must be worn "between bites and sips" while eating or drinking.

**B. Our Interest in Defeating the Federal Transportation Mask Mandate**

Plaintiffs are 10 airline pilots who are subject to the FTMM every hour we work, with an exception only for pilots on duty in the cockpit due to safety reasons.[4]

The Mask Mandate is *ultra vires* and should be vacated by this Court worldwide[5], as occurred in *HFDF*. While passengers only have to endure forced masking when traveling on public transportation, we are expected to obstruct our oxygen intake most of the time while at work. This endangers our health and imperils aviation safety. The Court should also issue a permanent injunction prohibiting the government defendants from ever reissuing a Mask Mandate again.

Tens of thousands of our colleagues were laid off or placed on long-term unpaid leave due to the economic devastation caused by the FTMM and other government travel restrictions related to COVID-19 that did nothing to stop the virus' spread.

Our salaries are a reflection of the financial health of the companies we work for. Some of us had to take unpaid leave and/or compensation reductions due to the massive impact COVID-19 had on the travel industry, in part due to the millions of disabled Americans who were banned from flying because they medically can't tolerate having their breathing blocked and many millions more who refused to wear a mask because it conflicts with their liberty interests to be in

---

[4] At some airlines, pilots who aren't vaccinated against COVID-19 for medical, religious, or other reasons were required to wear a mask even while flying the aircraft.

[5] The FTMM purports to apply to flights to and from the United States even while planes are in foreign or international airspace, well beyond the United States' jurisdiction.

control of their own body and to make their own medical decisions. The Mask Mandate was det-rimental to our industry's ability to generate profits. Since *vacatur* occurred 3½ months ago, we have seen demand for tickets soar to levels so high our companies can't fly enough planes to accommodate it because of staffing shortages. This surge in demand is no doubt thanks to Judge Mizelle's decision declaring the Mask Mandate unlawful in *HFDF*. We have seen so many custom-ers smile upon stepping onto an airplane for the first time in more than two years since they are no longer forced by the government to obstruct their oxygen intake.

But more important than our job security and salaries is our duty to ensure aviation safety. The FTMM forced as to ignore many long-standing FAA safety regulations, placing the flying pub-lic in danger. This is totally unacceptable to us as aviation professionals. The Court can't allow one agency of the government (CDC) to override safety rules promulgated by another agency (FAA).

## II. ARGUMENT SUMMARY

The airline industry was perhaps the #1 sector of the economy hardest hit by COVID-19 panic and the ensuing crippling travel restrictions imposed by the federal government including the FTMM, International Traveler Testing Requirement, and bans on foreign travelers entering the United States. CDC and HHS refused to hear comments such as those made by hundreds of trans-portation, travel, and tourism businesses and organizations:

> "[M]any of these same policies also came with the ***devastating*** ... consequences of severely limiting and discouraging travel. ... Since the start of the pandemic, the federal government's advisories, policies, and public messaging have focused on discouraging or actively restricting domestic and international travel. It is time for high-level officials within the Administration to publicly encourage travel to and within the U.S. Doing so would send a clear message to U.S. businesses, trading

partners, and travelers alike that America is once again open for business." (emphasis added).

CDC and HHS failed to consider the enormous harms the Mask Mandate would impose on our industry, including that we as crew members would be on the frontlines of enforcement. We never signed up to be the mask police. The federal government unlawfully commandeered us to become its enforcers, a job we never signed up for, which led to violence against many flight crew.

> "Regardless of how serious the problem an administrative agency seeks to address, however, it may not exercise its authority 'in a manner that is inconsistent with the administrative structure that Congress enacted into law.' … "[A]n administrative agency's power to regulate in the public interest must always be grounded in a valid grant of authority from Congress. … Courts must be guided by a degree of common sense as to the manner in which Congress is likely to delegate a policy decision of such economic and political magnitude to an administrative agency." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125, 151 (2000).

The Mask Mandate created chaos in the sky as tens of thousands of Americans stood up for their inherent right to breathe freely, make their own medical decisions, and be in control of their bodies. CDC and HHS did not consider that depriving passengers of oxygen by obstructing their breathing would lead to thousands of altercations. Pressurized airplane cabins contain much less oxygen than where most people live. The average altitude equivalent in the cabin is 6,800 feet, or higher for a prolonged time, depending on the flight. This diminished O2 in the brain led to hundreds of incidents of flight attendants being assaulted by passengers wanting to remove their masks, or by other paranoid customers demanding that a disabled person with a medical exemption or another customer experiencing breathing difficulties should cover his/her face.

Since Judge Mizelle struck down the Mask Mandate 3½ months ago, we have seen many wonderful results:

1. The number of "unruly" passengers reported to the Federal Aviation Administration ("FAA") since April 18 has gone way down (Ex. 17);

2. The number of passengers wanting to fly now that they don't have to block their breathing has skyrocketed. Our companies have such high demand for tickets that they don't have enough employees to cover the flights to keep all of the planes in the air; and

3. There have been no reports of increased COVID-19 spread in the aviation sector as a result of the *vacatur* of the FTMM. This proves our arguments that masks do not reduce the spread of a respiratory disease such as coronavirus and the HEPA filters aboard aircraft provide the most efficient air circulation. The government has falsely claimed that *vacatur* of the FTMM would have "disruptive and dangerous consequences." Now the entire country knows that was nothing but fearmongering to advance President Biden's political agenda, which had nothing whatsoever to do with science.

Judge Mizelle properly recognized how illicit the FTMM is:

"Under this reading of [42 USC] § 264(a), the CDC claims a power to regulate how individuals behave in such diverse places as airplanes, train stations, marinas, and personal vehicles used in ridesharing services across town. *See* 86 Fed. Reg. at 8028. Along with the power to require that owners, operators, and employees of transit facilities use their best efforts to enforce the CDC's commands on the public. And all this with the threat of civil and criminal penalties – or at a minimum ejection from the conveyance or transportation hub." *HFDF*.

We want to give the Court our unique perspective on the illegal Mask Mandate from the eyes of those who had to deal with its negative consequences every day at work despite the fact Congress passed dozens of bills in response to COVID-19, yet none of them contained a transportation mask mandate. Several bills were introduced to force masking on planes, but all died in committee, showing a clear congressional consensus that face coverings were not necessary.

> "EPA's interpretation is also unreasonable because it would bring about an enormous and transformative expansion in EPA's regulatory authority without clear congressional authorization. When an agency claims to discover in a long-extant statute an unheralded power to regulate a significant portion of the American economy, we typically greet its announcement with a measure of skepticism. We expect Congress to speak clearly if it wishes to assign to an agency decisions of vast economic and political significance. … An agency has no power to tailor legislation to bureaucratic policy goals by rewriting unambiguous statutory terms. … We reaffirm the core administrative-law principle that an agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Utility Air Regulatory Group v. EPA*, 573 U.S. 302 (2014) (cleaned up).

This Court should follow Judge Mizelle in declaring CDC and HHS issued the FTMM in excess of their statutory authority under the Public Health Service Act ("PHSA"), failed to give notice and comment, and were arbitrary and capricious. We also argue additional grounds for *vacatur* that were not presented by the plaintiffs in *HFDF*.

> "[T]he [Mask] Mandate exceeded the CDC's statutory authority, improperly invoked the good cause exception to notice and comment rulemaking, and failed to adequately explain its decisions. Because 'our system does not permit agencies to act unlawfully even in pursuit of desirable ends,' the Court declares unlawful and vacates the Mask Mandate." *HFDF*.

CDC and HHS have no authority from Congress to mandate masks in the nation's entire public-transportation system, more than 90% of which involves trips that never cross state lines and have no nexus to interstate commerce. The FTMM was issued without notice and comment as required by the APA and is arbitrary and capricious. It also violates the Constitution, international

law, and other federal statutes and regulations.

Thanks to Judge Mizelle's decision in *HFDF*, the country now knows the FTMM was never "necessary" nor grounded in science. It was a purely political decision by a newly elected president who wanted to fulfill a campaign pledge, one he acknowledged multiple times was likely unconstitutional. We all are now aware the government defendants are guilty of crying wolf. Masks never stopped the spread of COVID-19, as evidenced by the fact the president himself is currently infected with coronavirus – more than 2½ years after HHS declared the virus a public-health emergency. The American people and the transportation industry are euphoric that the FTMM is not presently in effect. People are voting with their faces – the vast majority of which we now see uncovered on transportation conveyances across the nation. This Court must ensure these restrictions on our liberty may never be reimposed.

Within hours of Judge Mizelle's decision April 18, the White House announced CDC and HHS would immediately cease enforcing the *ultra vires* Mask Mandate. TSA, which was not a party in *HFDF*, then promptly issued a statement that it was withdrawing Version "E" (the fifth extension) of the three Health Directives and one Emergency Amendment enforcing the FTMM, which were set to go into effect April 19 and last until May 3, 2022.  Further extensions were likely given the Biden Administration's continued false belief that masks are effective in reducing the spread of respiratory viruses such as COVID-19 and that Congress gave it authority to dictate that all transportation passengers and workers using any mode of transit across the entire nation cover their faces – an impossibility for millions of Americans with various medical disabilities who can't safely tolerate wearing masks and a policy that put aviation safety at risk.

As news of the *HFDF* decision declaring the FTMM illegal spread April 18, almost every private

company (including every U.S. airline) and government transit authority subject to the require-
ment immediately terminated face-covering enforcement. Tens of thousands of elated airplane
pilots, flight attendants, bus drivers, train conductors, subway operators, taxi and rideshare driv-
ers, and ferry captains got on their intercoms to inform passengers they may remove their masks.
These announcements were met by loud cheers and applause by a supermajority of passengers
and employees. Videos went viral of flight attendants – giant smiles on their faces visible for the
first time in two years – walking down airplane aisles midflight with a trash bag for customers to
discard their masks.

The jubilation was also strongly felt by America's disabled community, many of whom have
medical conditions that preclude them from, *inter alia*, obstructing their breathing and/or having
objects placed on their faces. Despite the government's disingenuous arguments to the contrary,
millions of disabled Americans were banned from using all forms of public transportation nation-
wide for nearly two years (at first because of airline and transit-agency mask requirements, then
as of Feb. 1, 2021, the FTMM).

To some this case might seem moot, but the government has told both the 11th and D.C.
circuits that it desperately wants to reinstitute the FTMM. TSA recently told the judiciary, "Be-
cause the COVID-19 pandemic remains ongoing, however, TSA may elect to promulgate new di-
rectives related to the wearing of masks should it determine that such measures are necessary
to prevent an ongoing threat to transportation security." Brief at 5, *Wall v. TSA*, No. 21-1220 (D.C.
Cir.). The government's position make crystal clear why it is still so important for us to receive a
judgment striking down the Mask Mandate. This Court is not bound by a decision from another
district court nor an out-of-circuit Court of Appeals. This matter is ripe for decision.

The Supreme Court issued at least seven emergency orders[6] unequivocally holding that governments may not restrict constitutional rights or disregard clear statutory terms even in the name of fighting a pandemic. Because CDC and HHS issued the challenged FTMM Order without constitutional, statutory, or regulatory authority, this Court must not only declare the FTMM unlawful but also permanently enjoin these agencies from ever reissuing mask mandates without clear, unambiguous authorization from Congress. A permanent injunction is the only way to stop these defendants' illicit conduct.

### III. ARGUMENT

**A. The Mask Mandate must be vacated because it violates Federal Aviation Administration safety regulations, making it arbitrary and capricious (Count 3).**

We have serious concerns about the safety implications of the Mask Mandate, none of which were studied by CDC, HHS, or any other agency as the policy was rushed into place only 12 days after the inauguration of a new president who made a national mask dictate a top campaign promise – even though he acknowledged it was likely unconstitutional.

As pilots, our health is strictly governed by regulations issued by FAA. We are prohibited from operating an aircraft during any period of medical deficiency. However, we are required to comply with the Mask Mandate, which causes known medical deficiencies.

> "[N]o person who holds a medical certificate issued under part 67 of this chapter may act as pilot in command, or in any other capacity as a required pilot flight crewmember, while that person: … (1) Knows or has reason to know of any medical condition that would make the person unable to meet the requirements for

---

[6] *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 66 (2020); *Robinson v. Murphy*, 141 S.Ct. 972 (2020); *High Plains Harvest Church v. Polis*, 141 S.Ct. 527 (2020); *South Bay United Pentecostal Church v. Newsom*, 141 S.Ct. 716 (2021); *Tandon v. Newsom*, 141 S.Ct. 1294 (2021); *Alabama Ass'n of Realtors v. HHS,* 141 S.Ct. 2485 (2021); and *NFIB v. Dept. of Labor*, 142 S.Ct. 661 (U.S. Jan. 13, 2022).

the medical certificate necessary for the pilot operation…" 14 CFR § 61.53(a).

Under the FTMM, pilots must wear a mask before and after flight, causing us numerous medical deficiencies. "[A] person shall not act as pilot in command, or in any other capacity as a required pilot flight crewmember, while that person knows or has reason to know of any medical condition that would make the person unable to operate the aircraft in a safe manner." 14 CFR § 61.53(b).

Wearing a mask before we work a flight causes us to feel we are unable to operate the aircraft in a safe manner. Yet due to the Mask Mandate and our companies' enforcement thereof, we are expected to comply and fly anyway.

> "[T]he Court agrees with Plaintiffs that the CDC failed to adequately explain its reasoning… The CDC does not 'articulate a satisfactory explanation' – or any explanation at all – for its action and fails to include a 'rational connection between the facts found and the choices made.' … And so, the decision is arbitrary and capricious and due to be 'set aside'..." *HFDF*.

Although FAA medical regulations apply to pilots, other regulations govern flight attendants as well. A "flight crew" consists of the pilots in the cockpit and the flight attendants working in the passenger cabin. "Each flight crew member must report for any flight duty period rested and prepared to perform his or her assigned duties." 14 CFR § 117.5(a). Flight attendants are designated safety-critical because they are responsible for ensuring cabin safety and security while in flight. If there's an emergency in the cabin, they are the first responders. But all of the health problems mentioned below reduce their ability to ensure flight safety. Notably while pilots are exempt from the FTMM in the cockpit, there is no similar safety exemption for flight attendants.

Wearing a mask before a flight (for example, while on a shuttle bus from our hotel to the airport and in the terminal) makes us feel like we are not fully prepared to perform our assigned

duties, including due to fatigue. "Extended wearing of [a] mask, which has become a part of rou-

tine life, has led to the emergence of 'mask fatigue.' Mask fatigue is defined as the lack of energy

that accompanies and/or follows prolonged wearing of a mask. … There is published evidence

which shows that extended wearing of a mask impairs functioning…" Mask fatigue causes at least

24 significant harms to human health.

"The consequences of a negligent or wrongful certification, which would permit an unquali-

fied person to take the controls of an aircraft, can be serious for the public…," according to FAA's

Guide for Aviation Medical Examiners. Ex. 1.

All aviators must see an FAA certified doctor ("Aviation Medical Examiner") 1-2 times each

year. Pilots are obligated by law (49 USC § 46310) to disclose any disqualifying condition pertain-

ing to obtaining or maintaining our medical certificate. If we know that masks are unhealthy for

us and their continued use can cause cumulative harm (as evidenced by years of unbiased scien-

tific studies prior to COVID-19 politicization)[7], we are morally and legally obligated to abstain

and/or report.

CDC and HHS cited no authority in the FTMM Order allowing them to override published reg-

ulations of the federal agency (FAA) charged by Congress with ensuring aviation safety.

> "This view of EPA's authority was not only unprecedented; it also effected a 'fun-
> damental revision of the statute, changing it from [one sort of] scheme of … reg-
> ulation' into an entirely different kind. … here is little reason to think Congress
> assigned such decisions to the Agency. … 'Even if Congress has delegated an
> agency general rulemaking or adjudicatory power, judges presume that Congress
> does not delegate its authority to settle or amend major social and economic pol-
> icy decisions.'" *West Virginia v. EPA*, 142 S. Ct. 2587, 2612 (2022).

---

[7] Since the pandemic began in 2020, many more studies and articles have come out proving that
worn face masks have lots of bacteria and fungi, and therefore are dangerous to our health. The
science never changed.

The number of hours pilots and flight attendants may work in a day is controlled by law. This can be as long as 16 hours per shift – double a normal workday. "A Flight Duty Period includes the duties performed by the flight crew member on behalf of the certificate holder that occur before a flight segment or between flight segments without a required intervening rest period." 14 CFR § 117.3.

The Mask Mandate forces us to obstruct our oxygen intake, causing diminished mental and physical capacity, during our Flight Duty Period. Despite this diminution of our physical capacities, the government has not reduced the number of hours we may work per day to account for the numerous impairments masks cause.

> "Even for a good cause, including a cause that is intended to slow the spread of Covid-19, Defendants cannot go beyond the authority authorized by Congress. Congress must provide clear authorization if delegating the exercise of powers of vast economic and political significance, if the authority would significantly alter the balance between federal and state power, or if the administrative interpretation of a statute invokes the outer limits of Congress' power. Accordingly, the Court finds that the president exceeded his authority." *Kentucky v. Biden*, No. 3:21-cv-55 (E.D. Ky. Nov. 30, 2021) (cleaned up) (enjoining vaccine mandate for federal contractors). *See also Georgia v. Biden*, No. 1:21-cv-163 (S.D. Ga. Dec. 7, 2021) (same).

When we travel on a commercial flight as a passenger not paying for a ticket, we are referred to as "non-revs" or "jumpseaters" since we may occupy an additional seat in the cockpit or the cabin called a "jumpseat." If that seat is already taken or there are regular seats open in the cabin, we may be seated in a passenger seat. When we are on duty and flying in a regular seat, this is referred to as "deadheading."

"Deadhead transportation means transportation of a flight crew member as a passenger or non-operating flight crew member by any mode of transportation, as required by a certificate

holder, excluding transportation to or from a suitable accommodation. All time spent in dead-head transportation is duty and is not rest." When we travel as a jumpseater and/or are dead-heading, we are considered an additional crewmember. Ex. 2.

"Even when not in uniform, remember that you are still considered an additional crewmember and you may be required to assist on the flight deck or in the cabin in case of unusual or emergency circumstances. You must remain prepared to assist the flight crew should the need arise." *Id*.

However, we are forced to wear masks when traveling as a jumpseater and/or deadheader, which reduces our mental and physical capacities to be able to assist the on-duty flight crew should an emergency occur. "Since masking impairs our ability when conducting a flight as evidenced by the fact that we are not required to wear a mask when flying, it also impairs our fitness for flight when acting in other required capacities." *Id*.

The Department of Transportation ("DOT"), which includes FAA, notes that "the failure to wear a face covering is not itself a federal violation," contradicting the Mask Mandate. *Id*. Yet some pilots have been fined by TSA for failing to wear a mask in the airport terminal while on duty – something that is forbidden by the agency's Health Directives themselves since they exempt from mandatory masking "People for whom wearing a mask would create a risk to workplace health, safety, or job duty as determined by the relevant workplace safety guidelines or federal regulations." TSA issued its Health Directives at the behest of CDC and HHS, even though

TSA has no authority to regulate health matters, which have nothing to do with transporta-tion security.[8]

FAA recognizes the dangers of forced masking of flight crew: "Air carriers should complete a safety risk assessment and provide guidance to their crewmembers on procedures for the use of masks as they may affect the donning of oxygen masks or conducting other safety functions on the flight deck or in the cabin." FAA Safety Alert for Operators 20009 (May 25, 2021); Ex. 3.

A court must "hold unlawful and set aside agency action … found to be … in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 USC § 706(2)(C). Because CDC's Mask Mandate violates FAA safety regulations, the Court should hold it unlawful and strike it down because the agencies acted short of statutory right, and issuing an order that contradicts another agency's published regulations is arbitrary, capricious, and an abuse of discretion. An agency in HHS may not override with an "order" duly promulgated safety rules published in the Code of Federal Regulations by an agency (FAA) in another executive department (DOT) that Con-gress has tasked with ensuring the safety of flight, including the health of crewmembers.

"An agency's general rulemaking authority does not mean that the specific rule the agency promulgates is a valid exercise of that authority. Agencies are ... bound, not only by the ultimate purposes Congress has selected, but by the means it has deemed appropriate, and prescribed, for the pursuit of those purposes." *NAACP v. DeVos*, No. 20-cv-1996, 2020 WL 5291406 (D.D.C. Sept. 4, 2020) (quoting *Colo. River Indian Tribes v. Nat'l Indian Gaming Comm'n*, 466 F.3rd 134,

---

[8] TSA's Health Directives enforcing CDC's Federal Transportation Mask Mandate are currently being challenged in the U.S. Supreme Court and the U.S. Court of Appeals for the District of Co-lumbia Circuit. *Corbett v. TSA*, No. 22-33 (U.S.); *Wall v. TSA*, No. 21-1220 (D.C. Cir.). We did not include TSA as a defendant in this case due to a statute that can be read as giving the Courts of Appeals exclusive jurisdiction to adjudicate challenges to TSA directives.

139 (D.C. Cir. 2006)). CDC's general rulemaking authority does not give it "*[c]arte blanche* author-ity" to promulgate any rule it deems necessary. *Merck & Co. v. HHS*, 385 F. Supp. 3d 81, 92 (D.D.C. 2019), aff'd 962 F.3d 531 (D.C. Cir. 2020). Grants of rulemaking authority often contain "capa-cious terms," but courts must still "tak[e] seriously, and apply[] rigorously, in all cases, statutory limits on agencies' authority." *Arlington v. FCC*, 569 U.S. 290, 307 (2013). A policy that cannot be harmonized with another statute and/or published regulation is unlawful. *Dixon v. United States*, 381 U.S. 68 (1965).

**B. The Mask Mandate must be vacated because it creates chaos in the sky, recklessly endan-gering aviation safety and security, making it arbitrary and capricious (Count 3).**

The Mask Mandate endangers aviation security. CDC, in attempting to extend the Mask Man-date indefinitely even though all 50 states do not require face coverings, fails to take into account that in addition to the millions of Americans who can't safely obstruct their breathing because of a medical condition, tens of millions of Americans vehemently object to anyone ordering them to wear face masks. This is evidenced by 5,981 incidents of "unruly" behavior aboard airplanes reported to FAA during 2021, 4,290 of which related to the Mask Mandate.

2021 was "the worst year on record for buffoonish behavior on planes." Ex. 4. For 2022, until the Mask Mandate was vacated April 18, FAA received 814 reports of unruly passengers, 535 related to the FTMM. This conduct is understandable since the Food, Drug, & Cosmetic Act ("FDCA") protects all Americans' right to refuse administration of a Food & Drug Administration unauthorized or Emergency Use Authorization medical device such as a face covering. Masks make it difficult to breathe and function – especially in our workplace seven miles high in the sky,

where oxygen levels are much lower than most passengers who live at or near sea level are accustomed to.

The Mask Mandate worsens transportation security as some people violently stand up for their right to breathe freely. And unfortunately some of our colleagues have become terribly hostile to any passenger who dares remove his/her mask for any reason, creating great fiction in the cabin.

"Despite coming with hefty fines and the threat of criminal prosecution, the [FTMM] has spawned an epidemic of shouting matches – and worse – between defiant passengers and flight crews. … But if airlines are the last place in America to require masks, the skies are likely to become even less friendly for flight crews." Ex. 4. "[T]he level of in-flight fracas has gotten exponentially worse in the past two years, with most cases involving disputes over masking." *Id*. We dread the riots that might occur in airports and on board our planes should CDC and HHS ever be permitted to reimpose the FTMM. The last 3½ months have made clear that the vast majority of travelers do not want their faces covered.

Airplanes, airports, and other transportation conveyances and terminals were among the last places in America where anyone was forced to block their breathing. Why should we have to suffer when the federal government doesn't require masking in any other sector of society?

"The current climate in the passenger cabin is highly stressed. We are experiencing a record high number of aggressive passenger incidents, many of which are fueled by … refusal to comply with onboard mask rules," the president of a major flight-attendant union said.

All of the "unruly" behavior we've seen aboard airplanes when airlines try to enforce the Mask Mandate is explained by science, none of which CDC or HHS considered:

> "Wearing masks, thus, entails a feeling of deprivation of freedom and loss of autonomy and self-determination, which can lead to suppressed anger and subconscious constant distraction, especially as the wearing of masks is mostly dictated and ordered by others. These perceived interferences of integrity, self-determination and autonomy, coupled with discomfort, often contribute to substantial distraction and may ultimately be combined with the physiologically mask-related decline in psychomotoric abilities, reduced responsiveness, and an overall impaired cognitive performance."

Being forced to cover the nose and mouth, a person's only two sources of oxygen – breathing is of course essential to life – "leads to misjudging situations as well as delayed, incorrect, and inappropriate behavior and a decline in the effectiveness of the mask wearer."

"[P]assengers have verbally abused and taunted flight attendants trying to enforce airline mask requirements…" Ex. 5. It is a miracle that the FTMM has not yet led to a major aviation safety incident.

> "A flight attendant reported being so busy seeking mask compliance that the employee couldn't safely reach a seat in time for landing. One airline captain, distracted by mask concerns, descended to the wrong altitude. The repeated talk of problem passengers in Row 12 led the captain to mistakenly head toward 12,000 feet, not a higher altitude given by air traffic control to keep planes safely apart." *Id*.

"It is no secret that the threats flight attendants face each day have dramatically increased," states a letter from Julie Hedrick, president of the Association of Professional Flight Attendants. "Every day, we are subjected to verbal and sometimes physical altercations, mainly centered around mask compliance." Ex. 6.

Carrying out mask rules also worsens the already strained position of flight attendants, who are frontline enforcers even as they keep their usual safety responsibilities. "Flight attendants are dealing with mask compliance issues on every single flight they work right now," said Taylor Garland, spokeswoman for the Association of Flight Attendants-CWA, noting that those efforts

range from friendly reminders to facing passengers "actively challenging the flight attendants' authority." Ex. 7.

"One in five flight attendants so far this year has been involved in physical altercations with unruly passengers and 85% of cabin crew members have dealt with disruptive passengers this year…" Ex. 8. "[M]any flight attendants reported … being subjected to yelling and swearing for federal mask mandate directions." *Id*.

> "My fear, however, is that the mandate is going to someday cause a far bigger problem while in the air than just some unruly passenger being eventually duct-taped to a seat. One of these days, a confrontation is going to escalate far further than the crew member who had a finger bitten or the flight attendant who caught an errant punch square in the face and had two teeth knocked out. Ask yourself, is it worth it to have a mandate that ostensibly is for your safety but only leads further to unsafe conditions?" Ex. 9.

"Even if not intended to bring the plane down, you can imagine the kind of pandemonium on planes that we've seen in some of these videos that people have taken that can cause an incredibly dangerous accident," said Attorney General Merrick Garland." Ex. 10. We predicted these incidents would just about vanish if a court vacated the FTMM – and we were right. Ex. 17.

"The tense situation in the air … has led many attendants to say that they feel exhausted, afraid for their personal safety and, in some cases, concerned that the situation could turn dangerous." Due to the unlawful Mask Mandate, "encountering unruly passengers, once rare, is now almost expected." Ex. 11.

Most airlines, including our employers, called for the abolition of the FTMM for 10 months, but CDC and HHS would not listen. With forced masking "in place, there has been a rise in onboard incidents that have harmed flight attendants, delayed or cancelled flights … When this atmosphere is combined with tensions around mask policy, we have seen a summer with more

onboard skirmishes and more people injured than ever before," wrote Ben Baldanza, former CEO of Spirit Airlines. Ex. 12.

CDC and HHS lack authority from Congress to require masks. In late June, the Supreme Court held that when claimed authority is novel to the "history and the breadth of the authority that [the agency] has asserted," and the significance of allowing the new authority is considerable, there is a "'reason to hesitate before concluding' that Congress meant to confer such authority." *West Virginia*. The justices went through two pages of examples where despite "a colorable textual basis" for claimed authority, it was simply obvious that the claimed authority was not what Congress meant and thus the Court rejected the agency's overreach. *Id*.

Even if CDC and HHS did possess statutory power to cover the faces of all transport workers and passengers, the policy is arbitrary and capricious because the Mask Mandate does the exact *opposite* of the government's mission to ensure transportation security by actually *endangering* our security.

The general thrust of the Supreme Court's recent decision in *NFIB v. Dept. of Labor*, 142 S.Ct. 661 (2022), is that the Occupational Safety & Health Administration ("OSHA") was charged by Congress with precisely what its name indicates: ***occupational*** safety-and-health-related mat-ters. General public-health measures are outside of that scope. The justices held that a health matter that affects the general public at all times, whether or not they are at work, is not an "occupational" matter just because it also affects them on the job. The same is true here. COVID-19 is a "threat" to all segments of society, but that doesn't mean CDC and HHS may single out our sector for masking and not anywhere else.

> "When Congress seems slow to solve problems, it may be only natural that those in the Executive Branch might seek to take matters into their own hands. But the

Constitution does not authorize agencies to use pen-and-phone regulations as substitutes for laws passed by the people's representatives. In our Republic, '[i]t is the peculiar province of the legislature to prescribe general rules for the government of society.'" *West Virginia* at 2626 (Gorsuch & Alito, JJ., concurring).

The same skepticism that applied in *NFIB* when OSHA claimed newly found authority to wade into public-health regulation, and in *West Virginia* and the collection of cases found therein, should be applied with equal force to CDC's newly discovered purported authority to dicate what we have to put on our faces when we report for work.

## C. The Mask Mandate must be vacated because CDC and HHS failed to take into account that airplane cabins pose little risk for coronavirus spread, making it arbitrary and capricious (Count 3).

Another reason the Mask Mandate is arbitrary and capricious is because the federal government's only face-covering dictate applies to the sector of society that is at *least risk* for COVID-19 transmission. There's nothing in the administrative record showing that CDC or HHS considered the ample evidence provided by the aviation industry and others that masks aren't necessary and do nothing to reduce COVID-19 transmission, especially in the sterile environment of a jet aircraft. "[O]rdering masks to stop Covid-19 is like putting up chain-link fencing to keep out mosquitos." *Ridgeway Properties v. Beshear*, No. 20-CI-678 (Ky. Cir. June 8, 2021).

Our employers commissioned a lengthy report "Assessment of Risks of SARS-CoV-2 Transmission During Air Travel & Non-Pharmaceutical Interventions to Reduce Risk" by the Harvard T.H. Chan School of Public Health as part of the Aviation Public Health Initiative. The Court must consider these important findings:

> "Ventilation Systems on Aircraft: These sophisticated systems deliver high amounts of clean air to the cabin that rapidly disperses exhaled air, with displacement in the downward direction, reducing the risk of passenger-to-passenger spread of respiratory pathogens. Aircraft ventilation offers enhanced protection

for diluting and removing airborne contagions in comparison to other indoor spaces with conventional mechanical ventilation and is substantially better than residential situations. This level of ventilation effectively counters the proximity travelers will be subject to during flights. The level of ventilation provided on-board aircraft would substantially reduce the opportunity for person-to-person transmission of infectious particles… Particular emphasis is placed on the effec-tiveness of aircraft ventilation systems, which are able to filter 99.97% of SARS-CoV-2 particles out of air found on aircraft."

The study confirms what our employers have been promoting to customers: There is little-to-no risk of contracting COVID-19 aboard a plane. "After detailed analysis of these reports, it is the view of APHI that ***there have been a very low number of infections that could be attributed to exposure on aircraft during travel***." (emphasis added). In short, CDC and HHS were trying to solve a problem that never existed.

CDC itself admitted "the risk of getting a contagious disease on an airplane is low." *Id*. "Given the volume of commercial flights daily, carrying millions of passengers and crew worldwide, the number of documented incidents of infectious disease transmission occurring on board an air-craft remains infrequent." *Id*.

"[T]he risk of SARS-CoV-2 transmission onboard aircraft will be below that found in other routine activities during the pandemic, such as grocery shopping or eating out," according to the Aviation Public Health Initiative. It's thus arbitrary and capricious for CDC and HHS to demand we wear masks at work when such a federal requirement is not placed on any other industry – even though our workplace is less prone to virus spread than nearly every other sector. "[T]he aircraft's environmental control systems effectively diluting and removing pathogens significantly reduce the risk of passengers and crewmembers from acquiring COVID-19..." *Id*.

"Airplanes are already equipped with advanced air filtration systems, and airports have made large investments in air filtration, sanitation, and layouts. COVID-19 hospitalization rates have

decreased significantly and the mask mandate should be lifted to reflect the improved public

health environment," Airlines for America, a trade group that represents most of our companies,

wrote President Biden in demanding FTMM repeal.

The International Air Transport Association called for an end to mask mandates aboard air-

planes worldwide. The association notes on its website that

> "The risk of transmission in the modern cabin environment is low for a number of
> reasons: passengers face the same direction, seatbacks act as barriers, air flow is
> from the top to bottom, and the air is also very clean. Cabin air is refreshed 20-30
> times an hour; About 10 times more than most office buildings. … Most modern
> jet aircraft are equipped with High-Efficiency Particulate Air (HEPA) filters. These
> filters have similar performance to those used in hospital operating theatres and
> industrial clean rooms."

The Department of Defense's Transportation Command conducted a study in October 2020

that found

> "aerosol particles were rapidly diluted by the high air exchange rates of a typical
> aircraft cabin. Aerosol particles remained detectable for a period of less than six
> minutes on average. Both aircraft models (B777 and B767) tested removed partic-
> ulate matter 15 times faster than a typical home ventilation system and 5-6 times
> faster than the recommended design specifications for modern hospital operating
> or patient isolation rooms."

Similar tests by aircraft manufacturers Airbus, Boeing, and Embraer also found miniscule risk

of COVID-19 transmission.

As most of our employers noted in a March 23, 2022, letter to President Biden: "It is critical

to recognize that the burden of enforcing both the mask and predeparture testing requirements

has fallen on our employees for two years now. ***This is not a function they are trained to perform***

***and subjects them to daily challenges by frustrated customers. This in turn takes a toll on their***

***own well-being***." (emphasis added).

"We are requesting [abolition of the FTMM] not only for the benefit of the traveling public,

but also for the thousands of airline employees charged with enforcing a patchwork of now-out-dated regulations implemented in response to COVID-19." *Id*.

Congress has never imposed a mask mandate anywhere in the nation, despite having passed dozens of bills in response to the COVID-19 pandemic. All too often the Executive Branch attempts to circumvent the legislative process by imposing through "orders" and "directives" rules that Congress fails to adopt through legislation. That is precisely what happened here. The only vote Congress has ever taken on the Mask Mandate was the Senate's 57-40 decision to kill it. S.J.Res. 37 (March 15, 2022).

CDC failed to consider less restrictive rules that could have minimized the risk to public health such as using CDC/TSA systems called "Do Not Board" and "Lookout" to alert airlines to bar passengers who have tested positive for a communicable disease from boarding.

An agency must "explain the rejection of an alternative that was within the ambit of the existing Standard and shown to be effective." *Clinton Mem'l Hosp. v. Shalala*, 10 F.3d 854, 859 (D.C. Cir. 1993) (cleaned up). CDC has never explained why masks are more effective than using two existing systems to stop those travelers known to be infected with a communicable disease from boarding a plane.

> "[T]he Court agrees with Plaintiffs that the CDC failed to adequately explain its reasoning ... the Mask Mandate fails this reasoned-explanation standard. Beyond the primary decision to impose a mask requirement, the Mask Mandate provides little or no explanation for the CDC's choices. Specifically the CDC omits explanation for rejecting alternatives..." *HFDF*.

**D. The Mask Mandate must be vacated because CDC failed to consider that masks pose serious health risks to humans forced to wear them, including those who work in the transport sector, making it arbitrary and capricious (Count 3).**

In addition to the science showing that masks have proven totally ineffective in reducing coronavirus spread, there's nothing in the administrative record showing that CDC or HHS considered the serious health risks to human beings of forced masking nor the dangers of oxygen deprivation at high altitude such as in airplane cabins. Petitioners in the six consolidated challenges to TSA's part of the FTMM (*Wall v. TSA*) compiled an extensive collection of hundreds of scientific and medical studies illustrating the frightening number of negative health consequences of covering your face – harms we were forced to endure for more than 14 months because of the Mask Mandate. https://bit.ly/ masksarebad. It would take the Court several full days to read all of these studies, but we urge it to at least skim some of them to understand how wrong CDC and HHS are when claiming that masking reduces COVID-19 spread and does not harm our health. The administrative record includes just seven (flawed) mask studies supporting the government's position, but did not include any of the 228 studies posted at https://bit.ly/masksarebad.

"It is not clear however, what the scientific and clinical basis is for wearing facemasks as a protective strategy, given the fact that facemasks restrict breathing, causing hypoxemia and hypercapnia, and increase the risk for respiratory complications, self-contamination, and exacerbation of existing chronic conditions," according to a paper published by the National Institutes of Health, part of HHS.

The leading authority on this subject is a 42-page paper published April 20, 2021, by eight German doctors and scientists in the International Journal of Environmental Research & Public

Health. They found: "Up until now, there has been no comprehensive investigation as to the ad-verse health effects masks can cause." These German doctors and scientists coined a new dis-ease: Mask-Induced Exhaustion Syndrome. *Id*. We all suffer from this syndrome when forced to mask at work by CDC and HHS.

Symptoms include

> "an increase in breathing dead space volume, increase in breathing resistance, in-crease in blood carbon dioxide, decrease in blood oxygen saturation, increase in heart rate, increase in blood pressure, decrease in cardiopulmonary capacity, in-crease in respiratory rate, shortness of breath and difficulty breathing, headache, dizziness, feeling hot and clammy, decreased ability to concentrate, decreased ability to think, drowsiness, decrease in empathy perception, impaired skin barrier function with itching, acne, skin lesions and irritation, overall perceived fatigue and exhaustion." *Id*.

The government has no right to cause us pain and suffering just for doing our jobs. The Mask Mandate not only endangers transportation security but also our health. Some of our coworkers took extended medical leaves because they couldn't continue working with their natural breath-ing blocked. This caused enormous financial hardship and led to the current staffing crisis in the aviation industry. We know many colleagues who quit working for airlines so they could find a job in every other part of the economy that the federal government doesn't force upon employ-ees a dangerous, experimental, unproven medical device.

"The public interest is also served by maintaining our constitutional structure and maintaining the liberty of individuals to make intensely personal decisions according to their own convictions – even, or perhaps ***particularly***, when those decisions frustrate government officials." *BST Hold-ings v. OSHA*, No. 21-60845 (5th Cir. Nov. 12, 2021) (emphasis original).

**E. The Mask Mandate must be vacated because it recklessly endangers transportation workers by failing to comply with Occupational Safety & Health Administration rules for face coverings, making it arbitrary and capricious (Count 3).**

"Breathing is one of the most important physiological functions to sustain life and health. Human body requires a continuous and adequate oxygen (O2) supply to all organs and cells for normal function and survival. … Long-term practice of wearing facemasks has strong potential for devastating health consequences."

"Scientists have found evidence that some face masks which are on sale and being used by members of the general public are laced with toxic chemicals. … Experts are concerned that the presence of these chemicals in masks which are being worn for prolonged periods of time could cause unintended health issues." In no other aspect of workplace safety would the government ever allow workers to be exposed to these types of toxic chemicals.

Indeed, the Department of Labor has an agency that regulates workplace safety (OSHA). That agency sets standards for respiratory protection. 29 CFR § 1910.134. None of our employers followed these legal requirements as the Mask Mandate does not mention them. Ex. 13. Due to the dangers of obstructing a person's breathing, OSHA requires that a Respirator Medical Evaluation Questionnaire be completed by anyone who will be required to wear a mask at work. Ex. 14. But none of us have ever been asked to complete the questionnaire.

If any company demands someone wear a mask, OSHA requires it "Must provide respirators, training, and medical evaluations at no cost…" Ex. 15. In enforcing the Mask Mandate, none of our employers provided training or medical evaluations.

"All oxygen-deficient atmospheres (less than 19.5% O2 by volume) [such as airplane cabins] shall be considered IDLH," according to OSHA. IDLH stands for "immediately dangerous to life or

health." *Id*. OSHA requires companies mandating masks to

> "provide effective training to respirator users, including: why the respirator is necessary and how improper fit, use, or maintenance can compromise the protective effect of the respirator; limitations and capabilities of the respirator; use in emergency situations; how to inspect, put on and remove, use and check the seals; procedures for maintenance and storage; recognition of medical signs and symptoms that may limit or prevent effective use; and general requirements of this standard." *Id*.

None of our employers provided the required training.

"[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *Brown & Williamson* at 132-133. "The Act empowers the Secretary to set workplace safety standards, not broad public health measures. *See* 29 USC §655(b) (directing the Secretary to set 'occupational safety and health standards'); §655(c)(1) (authorizing the Secretary to impose emergency temporary standards necessary to protect 'employees' from grave danger in the workplace)." *NFIB*.

Based on this precedent, it's clear CDC lacks legal authority to force workplace safety measures. But *NFIB* makes obvious that a general public-health matter's tangential effect on something within an agency's purview simply does not give the agency the authority to regulate. Just as OSHA strayed too far with its vaccination or mask/test requirement and CDC too far with its Eviction Moratorium and Conditional Sailing Order severely restricting cruises, CDC and HHS both meandered well past the boundaries of their statutory authority by imposing the Mask Mandate. Again, issuing an order that violates regulations published by another department is arbitrary, capricious, and an abuse of discretion. All transportation hubs and conveyances are workplaces. Congress gives OSHA authority to regulate workplace safety and health, not CDC and HHS.

**F. The Mask Mandate must be vacated because CDC and HHS do not have authority to issue it under the Public Health Service Act (Count 1).**

Congress never gave CDC the staggering amount of power it has claimed during this pandemic, a fact the Supreme Court forcefully opined on last year in terminating the agency's Eviction Moratorium.

> "It would be one thing if Congress had specifically authorized the action that the CDC has taken. But that has not happened. Instead, the CDC has imposed a nationwide moratorium on evictions in reliance on a decades-old statute that authorizes it to implement measures like fumigation and pest extermination. It strains credulity to believe that this statute grants the CDC the sweeping authority that it asserts. … the sheer scope of the CDC's claimed authority under [42 USC § 264](a) would counsel against the Government's interpretation. We expect Congress to speak clearly when authorizing an agency to exercise powers of 'vast 'economic and political significance.'' … That is exactly the kind of power that the CDC claims here. … the Government's read of § [264](a) would give the CDC a breathtaking amount of authority. It is hard to see what measures this interpretation would place outside the CDC's reach…" *Ala. Ass'n of Realtors v. HHS*, 141 S.Ct. 2485 (2021).

Following the Supreme Court's clear holding, Judge Mizelle got it right:

> "[T]he Mask Mandate is best understood not as sanitation but as an exercise of the CDC's power to conditionally release individuals to travel despite concerns that they may spread a communicable disease… Subsection (d) allows for detention of an individual traveling between States only if he is 'reasonably believed to be infected' and is actually found 'upon examination' to be infected. The Mask Mandate complies with neither of these subsections. … As a result, the Mask Mandate exceeds the authority the statute grants the CDC." *HFDF*.

This Court must apply the Major Questions Doctrine and reject CDC's absurd contention that face masks are a "sanitation" measure.

> "[C]ommon sense as to the manner in which Congress would have been likely to delegate such power to the agency at issue made it very unlikely that Congress had actually done so. Extraordinary grants of regulatory authority are rarely accomplished through modest words, vague terms, or subtle devices. Nor does Congress typically use oblique or elliptical language to empower an agency to make a radical or fundamental change to a statutory scheme. Agencies have only those powers given to them by Congress, and enabling legislation is generally not an

open book to which the agency may add pages and change the plot line. We presume that Congress intends to make major policy decisions itself, not leave those decisions to agencies." *West Virginia.* (cleaned up).

This is one of the cases "in which the 'history and the breadth of the authority that [the agency] has asserted,' and the 'economic and political significance' of that assertion, provide a 'reason to hesitate before concluding that Congress' meant to confer such authority." *Id*.

"A statute must be read as a whole, and individual terms or phrases should not be interpreted in isolation." *Sealed Appellee 1 v. Sealed Appellant 1*, 767 F.3rd 418 (5th Cir. 2013). "It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Asadi v. G.E. Energy*, 720 F.3rd 620 (5th Cir. 2013). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dept. of Treasury*, 489 U.S. 803, 809 (1989).

Allowing CDC to adopt broad definitions of its authority without being confined by the statute's context, structure, and history does not meaningfully constrain its discretion. If Congress meant to give CDC such unlimited power, it needed to "provide substantial guidance." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 475 (2001). "Our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors*.

> "[B]oth separation of powers principles and a practical understanding of legislative intent make us 'reluctant to read into ambiguous statutory text' the delegation claimed to be lurking there. *Utility Air*, 573 U.S. at 324, 134 S.Ct. 2427. To convince us otherwise, something more than a merely plausible textual basis for the agency action is necessary. The agency instead must point to 'clear congressional authorization' for the power it claims." *West Virginia*.

Allowing CDC and HHS to issue mask *orders* based on vague terms such as "sanitation" when the Public Health Service Act only permits the agencies to promulgate *regulations*, would turn

CDC's director into a dictator. She could, as Dr. Rochelle Walensky did in the FTMM, blatantly ignore actual regulations published by other agencies such as OSHA and FAA that are designed to protect our safety at work.

> "In a world like that, agencies could churn out new laws more or less at whim. Intrusions on liberty would not be difficult and rare, but easy and profuse. … Stability would be lost, with vast numbers of laws changing with every new presidential administration. Rather than embody a wide social consensus and input from minority voices, laws would more often bear the support only of the party currently in power. … Finally, little would remain to stop agencies from moving into areas where state authority has traditionally predominated" such as intrastate transportation and public health. *Id*., (Gorsuch & Alito, JJ., concurring).

CDC and HHS did not promulgate *regulations* requiring masks, which is the only action the PHSA allows them to take. There is no authority for issuing "mandates" or "orders." The statute's plain meaning is clear. CDC's director,

> "with the approval of the Secretary [of HHS], is authorized to make and enforce such **regulations** as in his judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases from foreign countries into the States or possessions, or from one State or possession into any other State or possession. For purposes of carrying out and enforcing such **regulations**, [CDC] may provide for such inspection, fumigation, disinfection, sanitation, pest extermination, destruction of animals or articles found to be so infected or contaminated as to be sources of dangerous infection to human beings, and other measures, as in his judgment may be necessary." 42 USC § 264(a) (emphases added).

CDC and HHS labeled the FTMM more than a dozen times as an "Agency Order" or "Order." The agencies also specifically asserted that "This Order **is not a rule** within the meaning of the Administrative Procedure Act ('APA'') but rather is an emergency action taken…" (emphasis added). But "order" and "rule" (aka "regulation") have distinct meanings in the law. *Compare* 5 USC § 551(6) with 5 USC § 551(4).

The FTMM "order" clearly attempted to "prescribe law or policy." The order's text audaciously demands that conveyance operators "instruct[] persons that Federal law requires wearing

33

a mask on the conveyance and failure to comply constitutes a violation of Federal law," even though Congress never passed a law requiring maskwearing in any sector of society despite ample opportunities to do.

The Supreme Court describes a major question as one of "vast economic and political significance." First, airlines lost perhaps billions of dollars of revenue because of passengers who refused to fly due to the FTMM and the disabled who were barred from using the aviation system because they medically can't wear a mask. Second, the debate over mask mandates across the country has been the most intense political discussion during the pandemic. There are at least 14 states that have banned forcing masking – and courts have upheld their right to do so. *See E.T. v. Paxton*, No. 21-51083, 2022 WL 2914732 (5th Cir. July 25, 2022) (upholding Texas executive order prohibiting any governmental agency from requiring that anyone cover their face).

The Supreme Court spoke directly to this issue earlier this year in the context of another Biden Administration pandemic mandate never authorized by Congress:

> "The only exception is for workers who … wear a mask each workday. OSHA has never before imposed such a mandate. Nor has Congress. Indeed, although Congress has enacted significant legislation addressing the COVID-19 pandemic, it has declined to enact any measure similar to what OSHA has promulgated here. … Administrative agencies are creatures of statute. They accordingly possess only the authority that Congress has provided. … The question, then, is whether the Act plainly authorizes the Secretary's mandate. It does not. … It is not our role to weigh such tradeoffs. In our system of government, that is the responsibility of those chosen by the people through democratic processes." *NFIB*.

"Congress has chosen not to afford OSHA – or any federal agency – the authority to issue a vaccine mandate. … The Court rightly applies the major questions doctrine and concludes that this lone statutory subsection does not clearly authorize OSHA's mandate." *Id*. (Gorsuch, Thomas, & Alito, JJ., concurring). The same is true of the FTMM.

> "Congress could have spoken directly to the issue of vaccination, masking, or other precautions in the last year when passing other COVID-19-related legislation, but it did not and has not. … The plain language of defendants' cited authority, the statutory context, and the existing regulations all confirm that the Secretary's interpretation … is not a permissible construction of the statute. … the identified sources of authority cannot fairly be construed so broadly as to include an unprecedented, nationwide requirement of a medical procedure or universal masking." *Texas v. Becerra*, No. 5:21-cv-300 (N.D. Tex. Dec. 31, 2021) (enjoining HHS' mask-and-vaccine mandate for Head Start).

An agency may not be afforded *Chevron* deference under the Major Questions Doctrine. Here CDC's interpretation of the PHSA is unreasonable anyway, and would not receive deference even if this weren't a major question because the law is unambiguous: There is no congressional authorization in a 78-year-old statute to force 36 million travelers and workers to block their breathing every day, for no discernable benefit.

For an "agency to exercise regulatory authority over a major policy question of great economic and political importance, Congress must … expressly and specifically delegate to the agency the authority both to decide the major policy question…" *Paul v. United States*, 140 S.Ct. 342 (2019). Only Congress may decide whether masking is needed to combat COVID-19. It has made that determination: no.

"But there is an independent bar to the government's invocation of *Chevron*: the major questions doctrine. The government's interpretation is untenable because courts 'expect Congress to speak clearly' if it assigns decisions 'of vast economic and political significance' to an administrative agency. The CDC asserts such a power in the Mask Mandate, but § 264(a) is far from such a grant." *HFDF*.

**G. The Mask Mandate must be vacated because it was issued without notice and comment (Count 2).**

CDC and HHS issued the challenged Mask Mandate without giving notice and considering public comments. Had the agencies done so, thousands of pilots and flight attendants such as ourselves would have objected to the FTMM because it conflicts with the FAA safety regulations under which we are governed and creates detrimental health effects to those of us who work in safety-critical jobs. It also distracts from our important duties by forcing us to become the "mask police," mandating that passengers obstruct their breathing as a condition of transport. Had comments been taken, FAA would have likely joined us in cautioning against adopting the dangerous FTMM.

Likewise, many of our unions would have submitted comments urging TSA not to adopt the Mask Mandate.

> "Serving onboard during these contentious times and enforcing mask compliance is one of the most difficult jobs we have ever faced as flight attendants. Not since September 11, 2001, has our job environment changed so drastically and quickly. The number of physical and verbal assaults in our workplace has increased dramatically, many of which are related to mask compliance. … It is important to note that a large portion of our membership has expressed that they would like the freedom to choose whether to wear a mask at work," according to a letter from the Southwest Airlines' flight attendants union demanding FTMM repeal.

The APA requires agencies to issue rules, orders, directives, etc. through a notice-and-comment process. 5 USC § 553. As the court found in *HFDF*, good cause does not excuse CDC and HHS' failure to comply with the notice-and-comment process because the agencies had 10½ months to give notice, solicit comments, respond to those comments, and publish a regulation in the Code of Federal Regulations from the date the World Health Organization declared COVID-19 a global pandemic (March 11, 2020) until the date the Mask Mandate took effect (Feb. 1,

2021). 5 USC § 553(b)(3)(B).

"[T]he good cause exception does not apply when an alleged 'emergency' arises as the result of an agency's own delay." *Envt'l Def. Fund v. EPA*, 716 F.2d 915, 921 (D.C. Cir. 1983). "Notice and comment can only be avoided in truly exceptional emergency situations, which notably, cannot arise as a result of the agency's own delay. … an agency cannot show an emergency when it has been aware of the problem but nonetheless failed to take action." *Wash. All. of Tech. Workers v. DHS*, 202 F. Supp. 3rd 20, 26 (D.D.C. 2016) (cleaned up)*.*

A tribunal must "hold unlawful and set aside agency action … found to be … without observance of procedure required by law." 5 USC § 706(2)(D). This Court should declare the FTMM unlawful and set it aside because the mandate violates the APA's notice-and-comment requirement.

**H. The Mask Mandate must be vacated because CDC and HHS did not submit the FTMM to Congress and the comptroller general before it took effect, violating the Congressional Review Act (Count 4).**

The Congressional Review Act ("CRA") "requires federal agencies to submit a report on each new rule to both Houses of Congress and to the Comptroller General for review before a rule can take effect. 5 USC § 801(a)(1)(A). … The CRA allows Congress to review and disapprove rules issued by federal agencies for a period of 60 days using special procedures. 5 USC § 802." Government Accountability Office Decision B-333,501 (Dec. 14, 2021); Doc. 1 at Ex. 118.

"CDC did not submit a CRA report to Congress or the Comptroller General on the [FTMM]." *Id*. The CRA "requires that before a rule can take effect, an agency must submit the rule to both the House of Representatives and the Senate as well as the Comptroller General, and provides procedures for congressional review where Congress may disapprove of rules. We conclude that

the [FTMM] meets the definition of a rule for purposes of CRA and, therefore, is subject to CRA's requirements for submission and congressional review." *Id*.

"Here the [FTMM] meets the APA definition of a rule rather than an order. … despite its label, the [FTMM] is not an order for purposes of the APA because it is not the result of an adjudicatory process." *Id*.

The FTMM "is a rule for purposes of CRA because it meets the APA definition of a rule and no CRA exception applies. Accordingly, before it can take effect, the [FTMM] is subject to the requirement that it be submitted to both Houses of Congress and the Comptroller General for review, which provides Congress a period of 60 days in which it may disapprove the rule using special procedures in accordance with the CRA. While CDC asserted the need to act quickly as its justification for not submitting the Mask Requirement for congressional review, there is not an emergency exception under CRA." *Id*.

Because CDC and HHS never submitted the FTMM to Congress and the comptroller general, it has no legal effect and must be vacated. A court must "hold unlawful and set aside agency action … found to be … without observance of procedure required by law." 5 USC § 706(2)(D).

**I. If it does permit the FTMM, then the Public Health Service Act is an improper delegation of legislative power (Count 5).**

The U.S. Constitution provides that "All legislative Powers herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." Art. I, § 1. Under the Nondelegation Doctrine, Congress cannot transfer legislative power to the Executive Branch. Acts of Congress must supply an intelligible principle to guide the Executive Branch's enforcement discretion.

If the Court finds it does authorize the FTMM, § 361 of the Public Health Service Act (42 USC § 264) violates Article I's Vesting Clause and the separation of powers because Congress delegated legislative power to CDC and HHS with no intelligible principle to guide its discretion. That section authorizes CDC "to make and enforce such regulations as in [its] judgment are necessary to prevent the introduction, transmission, or spread of communicable diseases … from one State or possession into any other State or possession," with categories of allowable regulations (not orders) then listed. 42 USC § 264(a).

If PHSA § 361 is so broad as to authorize the FTMM, then Congress provided no intelligible principle to guide CDC's discretion to take actions that "are necessary" to "prevent the introduction, transmission, or spread of communicable diseases." *Id.* Vesting CDC with such broad authority and discretion without an intelligible principle violates the Nondelegation Doctrine.

The Court likely does not need to reach this question to grant us summary judgment because of the many other ways the FTMM is *ultra vires*. Indeed, Judge Mizelle determined she didn't need to decide nondelegation. *HFDF*. But if the Court reaches this question, it should declare that § 361 of the Public Health Service Act is unconstitutional because it violates Article I and the separation of powers. The Court should hold unlawful and set aside the FTMM because it is "found to be … contrary to constitutional right, power, privilege, or immunity." 5 USC § 706(2)(B).

**J. The FTMM must be vacated because it violates the 10th Amendment by applying to intrastate transportation in direct conflict with the mask policies of all 50 states, infringes on the states' sovereign police power to regulate public health, and commandeers state officials to enforce a federal order (Count 6).**

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. Amend. 10.

The 10th Amendment precludes CDC and HHS from applying any national mask mandate to intrastate transportation. The federal government only has constitutional authority to regulate interstate commerce. Most modes of transportation affected by the FTMM such as airport and hotel shuttles, city buses, subways, light rail, commuter trains, and taxis, and rideshare cars never cross state lines. Many flights we operate are likewise wholly intrastate, and airport terminals of course do not ever move and therefore can't cross state borders.

In addition to all 50 states not requiring masks, 14 states prohibit any public agency such as an airport or transit authority from requiring face coverings. Doc. 1 at Ex. 114. The federal government may not pre-empt the states' authority when it comes to regulating public health within their own borders. *Id*. at ¶¶ 229-233.

The FTMM unconstitutionally commandeers state officials such as airport authority employees to enforce a federal mandate. As the 10th Amendment makes clear, "In our federal system, the National Government possesses only limited powers; the States and the people retain the remainder. The States have broad authority to enact legislation for the public good – what [courts] have often called a 'police power.' The Federal Government, by contrast, has no such authority…" *Bond v. United States*, 572 U.S. 844, 854 (2014) (quoting *United States v. Lopez*, 514 U.S. 549, 567 (1995).

Areas reserved to the states include public health and intrastate transportation. Judge Mizelle correctly determined that the Mask Mandate "appl[ies] even in settings with little nexus to interstate disease spread, like city buses and Ubers. Such a definition reverses the import of history as well as the roles of the States and the federal government." *HFDF*.

CDC's eviction "moratorium intrudes into an area that is the particular domain of state law …

'Our precedents require Congress to enact exceedingly clear language if it wishes to significantly

alter the balance between federal and state power…'" *Alabama Ass'n of Realtors*.

The judiciary requires "a clear indication" from Congress that it meant to "override[] the usual

constitutional balance of federal and state powers" before interpreting a statute "in a way that

intrudes on the police power of the States." *Bond* at 858, 860.

The Court should declare the FTMM is unconstitutional because it violates the 10th Amend-

ment. 5 USC § 706(2)(B).

**K. The Mask Mandate must be vacated because it violates the Food, Drug, & Cosmetic Act (Count 7).**

The FDCA gives all Americans the legal right to refuse to use any medical device approved by

FDA (a unit of HHS) under an Emergency Use Authorization – as nearly all face coverings are. We

want to exercise our right to refuse administration of the product. However, doing so has resulted

in some of us being fined by TSA and others being reprimanded and/or suspended by our com-

panies due to the FTMM.

The Mask Mandate must be declared illegal because it violates the federal law prohibiting the

mandatory use of any medical device approved under an EUA by FDA. Face masks (except N95s)

are authorized by FDA during COVID-19 under an EUA. But individuals to whom any EUA device

is offered must be informed "of the option to accept *or refuse administration of the product*…"

21 USC § 360bbb-3(e)(1)(A)(ii)(III) (emphasis added). CDC and HHS can't force travelers to use

EUA products such as masks. The agencies may only *recommend* masks and advise passengers if

they refuse to wear a mask, the consequence (in their mistaken view) *might* be a higher risk for

contracting COVID-19.

Congress specifically carved out only one exception for when an individual would not have the option to accept or refuse administration of an EUA product and it only applies to the military – and only when the president issues an order that forced use of EUA products by service members is critical to national security. 10 USC § 1107a. *See Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003); 341 F. Supp. 2d 1 (D.D.C. 2004).

## IV. CONCLUSION

This Court should not allow such an expansive construction of 42 USC § 264(a) that permits CDC to require masking in the transportation industry. This would create a slippery slope for future orders by CDC and HHS that could force Americans to do anything the agencies' leaders deem "necessary" to supposedly control and prevent diseases. Imagine if CDC issued an order forbidding all sexual activity across America because of the current monkeypox outbreak. Under CDC's reading, if that's "necessary" to stop the spread of a disease, it has the power to halt all intimate relations to curtail monkeypox.

> "That Congress has transferred such a power to any administrative body is not to be presumed or implied from any doubtful and uncertain language. The words and phrases efficacious to make such a delegation of power are well understood, and have been frequently used, and if Congress had intended to grant such a power to the [agency], it cannot be doubted that it would have used language open to no misconstruction, but clear and direct." *ICC v. Cincinnati, N.O. & T.P.R. Co.*, 167 U.S. 479, 499 (1897).

The correct judgment here, as Judge Mizelle determined, is worldwide *vacatur*. The proper remedy in this circuit when a court finds an agency policy illegal is universal *vacatur*, as authorized and required by the APA. We also demand a permanent injunction to ensure CDC and HHS don't attempt to issue any future masking orders.

"The Constitution vests the [Judicial Branch] with the judicial Power of the United States. That power is not limited to the [circuit] wherein the court sits but extends across the country. It is not beyond the power of a court, in appropriate circumstances, to issue a nationwide injunction." *Texas v. United States*, 809 F.3rd 134, 188 (5th Cir. 2015). As was the case in *Ala. Ass'n of Realtors*, when a court determines that a CDC mandate that applies to all Americans is illegal, relief should extend to everyone. It also needs to be prospective, especially since the status quo today is the Mask Mandate is not being enforced. We want to ensure it stays that way well into the future so our industry is not decimated again by these damaging restrictions Congress never approved.

> "[T]he agency seeks to resolve for itself the sort of question normally reserved for Congress. As a result, we look for clear evidence that the people's representatives in Congress have actually afforded the agency the power it claims. ... courts may examine the age and focus of the statute the agency invokes in relation to the problem the agency seeks to address. As the Court puts it today, it is unlikely that Congress will make an '[e]xtraordinary gran[t] of regulatory authority' through 'vague language' in 'a long-extant statute.' ... Recently, too, this Court found a clear statement lacking when OSHA sought to impose a nationwide COVID-19 vaccine mandate based on a statutory provision that was adopted 40 years before the pandemic and that focused on conditions specific to the workplace rather than a problem faced by society at large. ... an agency's attempt to deploy an old statute focused on one problem to solve a new and different problem may also be a warning sign that it is acting without clear congressional authority." *West Virginia* (Gorsuch & Alito, JJ., concurring).

WHEREFORE, we request this Court issue the attached proposed order vacating the Federal Transportation Mask Mandate and issuing a permanent injunction forbidding CDC and HHS from ever again requiring transportation workers and passengers to wear face masks unless Congress specifically enacts legislation granting the defendants such authority. The proposed order includes our Prayers for Relief that remain relevant today. Doc. 1 at 58-59.

Respectfully submitted this 4th day of August 2022.

*Janviere Carlin*

Janviere Carlin, lead plaintiff
93 Londonderry Way
Uxbridge, MA 01569
Telephone: 757-274-3406
E-Mail: jshellie@charter.net

*Jeffery Chandler*

Jeffery Chandler, plaintiff
8263 Minton Ct.
Millersville, MD 21108
Telephone: 443-370-7428
E-Mail: chan_man7@yahoo.com

*Beth Ellis*

Beth Ellis, plaintiff
128 Milk St.
Blackstone, MA 01504
Telephone: 860-912-1284
E-Mail: bricher1@gmail.com

*Cristina Field*

Cristina Field, plaintiff
1155 Dewees St.
Sumter, SC 29150
Telephone: 334-669-9452
E-Mail: flying.cristina@gmail.com

*Gregory Ramola*

Gregory Ramola, plaintiff
5828 Stafford Springs Trail
Orlando, FL 32829
Telephone: 407-694-2767
E-Mail: noniogtitog@aol.com

*Kurt Schuster*

Kurt Schuster, plaintiff
83 White Tail Run
Hopkinton, NH 03229
Telephone: 517-404-8581
E-Mail: schu_fly@comcast.net

*Hal Sims*

Hal Christopher Sims, plaintiff
604 Green Meadow St. N.
Colleyville, TX 76034
Telephone: 817-875-4259
E-Mail:  hcsims@yahoo.com

*Nathan Town*

Nathan Alexander Town, plaintiff
6119 Whimbrelwood Dr.
Lithia, FL 33547
Telephone: 253-389-3217
E-Mail: townn85@gmail.com

*Jean-Michael Trousse*

Jean-Michael Trousse, plaintiff
1913 NE 21st St.
Fort Lauderdale, FL 33305
Telephone: 678-778-3777
E-Mail: jmtrousse@gmail.com

*Collier Yarish*

Collier Yarish, plaintiff
2185 3rd Pl. SW
Vero Beach, FL 32962
Telephone: 772-480-8348
E-Mail: cryarish@yahoo.com